January 27, 1977

## 77-2  MEMORANDUM OPINION FOR THE SECRETARY OF LABOR

### Legality of a Certain Proposed Composition of a Multiemployer Pension Fund Board of Trustees

This Office has been asked to respond to your predecessor's request for an opinion as to the legality of a certain proposed composition of a multiemployer pension fund board of trustees. Specifically, the question is whether a board composed of an equal number of labor and management trustees, but with a majority of neutral trustees chosen jointly by the union and employer representatives, would comport with Section 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5) (Supp. V). For the reasons that follow, we conclude that it would.

In broad outline, Section 302(a) of the LMRA prohibits payments or loans by an employer to any representative of any of his employees. It may be that, under the reasoning set forth in *Independent Association of Mutuel Employees* v. *New York Racing Association,* 398 F. 2d 587 (2d Cir. 1968), Section 302 would not even be applicable to the contemplated board. However, we proceed on the basis that Section 302 does apply here, and our opinion rests on the ground that the proposal falls within the exception provided in Section 302(c)(5). That provision exempts from Section 302(a)'s broad prohibition certain trust funds complying with specified requirements; the requirements relevant in this situation are set out in Section 302(c)(5)(B), reading as follows:

> Provided That . . . (B) the detailed basis on which such [trust fund] payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee group deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of

4

their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement.

In our opinion the proposed board of trustees would not contravene any of the above specified requirements. The provision sets forth no requirement that the employee and employer representatives must together remain in control of the board, or that the neutral trustees cannot constitute a majority. Instead, the statute itself, in its language referring to "neutral persons," explicitly allows for more than one neutral person on the board; it also explicitly contemplates that the neutral parties may often control the course the board takes, as may be the case under the Labor Department's proposal.

The core of the problem here is whether the statute allows neutral parties to be in control of the fund at all times (presuming they agree) or only in instances where the employers and employees deadlock. The statute, in its reference to the language "in the event that employer and employee group deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock," might be taken to suggest that the role of neutral parties is to break deadlock. We think, however, that this interpretation would elevate the quoted language from what it is—*i.e.*, a specification of a contingency—into a requirement that is simply not within the statute. The statute, for present purposes, requires only two things: (1) a written agreement specifying the basis on which payments are to be make; and (2) employees and employers must be equally represented in the administration of the fund. The requirement that the parties must *agree* as to the detailed basis on which payments are to be made, while directed at mandating a specification of the terms of employee benefits, *See* 92 Cong. Rec. 5345–46 (1946) (remarks of Senator Ball), nonetheless seems broad enough to sanction an agreement on the composition of the board that is to be in overall administration of the trust. The provision allowing the employee and employer representatives to "agree upon" neutral trustees more directly addresses this issue; it appears sufficiently open-ended to support any agreement as to the specification of "neutral persons" even to the extent of allowing them to come into control of the fund.

Nor do we find that the legislative history of the provision undermines this conclusion. To be sure, there are references in the debates to the fact that the funds under the new law would be under the "joint administration" of employers and employees. *See, e.g.,* 93 Cong. Rec. 4747 (1947) (remarks of Senators Revercomb and Taft), 93 Cong. Rec.

5

4749 (1947) (remarks of Senator Murray). While these statements could suggest that Congress contemplated that the employers and employees together would control the operation of the trust, we do not believe such to be necessarily the case. In our view, it is also reasonable to suppose that the statements were made with reference to what Congress assumed would be the normal, but not mandatory, situation; the fact that there is no reference in the statute to joint *control* supports this view. In addition, references in other parts of the debates indicate that the legislation was designed to secure employer "participation," *See* 93 Cong. Rec. 4748, 4751-52 (1947) (remarks of Senators Taft and Morse) or "voice," 92 Cong. Rec. 4892, 5180-81 (1946) (remarks of Senators Byrd and Overton) in the administration of the funds. These remarks suggest that the employer (and the employees, by virtue of the equal representation requirement) need not necessarily be one of the fund's controlling forces, but might take a lesser part in the administration of the fund.

More importantly, the "joint administration" of the fund was by no means an underlying purpose of the legislation; rather, it was a means to secure Congress' ultimate goal. 93 Cong. Rec. 4747 (1947) (remarks of Senator Taft), 92 Cong. Rec. 5337 (1946) (remarks of Senator Tydings). This goal was to ensure that the trust funds would be used for the purposes for which they were established, 93 Cong. Rec. 4678 (1947) (remarks of Senator Ball), 92 Cong. Rec. 5336, 5346 (1946) (remarks of Senators Knowland and Ball); we are informed that the Department's proposal is designed to accomplish this same result. As such, we do not believe that the proposal here should be barred by vague references in the legislative history to methods that Congress did not see fit to include within the statutory language.

For the foregoing reasons, we conclude that the proposed board of trustees would comply with the requirements set forth in Section 302(c)(5).

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

6